BERT KIRKMAN, Individually and as President of Local Union No. 3 of The International Brotherhood of Electrical Workers, an Unincorporated Association Consisting of More Than Seven Persons, and Fifteen Others, Respondents, *v.* WESTCHESTER NEWSPAPERS, INC., ARTHUR C. SAUNDERS, McCLURE NEWSPAPER SYNDICATE, INC., RICHARD H. WALDO and JAMES McMULLIN, Appellants.

First Department, January 17, 1941.

*Joseph Reeback* of counsel [*Charles S. Cunningham* with him on the brief; *Gerlach, Reeback & Fuller*, attorneys], for the appellants Westchester Newspapers, Inc., and Arthur C. Saunders.

*Arthur E. Farmer* of counsel [*Stern & Reubens*, attorneys], for the appellants McClure Newspaper Syndicate, Inc., Richard H. Waldo and James McMullin.

*Harold Stern*, for the respondents.

COHN, J.   The action is in libel.   Plaintiffs are Local Union No. 3 of the International Brotherhood of Electrical Workers, an unincorporated association consisting of 17,000 members, and sixteen of the union's officials.

The first cause of action is brought in behalf of the union; each of the remaining sixteen causes of action is brought, respectively, in behalf of a different official of the union.   The union seeks recovery of damages for itself, because the article complained of holds it and its members up to public scorn, hatred and ridicule and greatly injures the union and its members in their reputation, business and credit.   Damages are sought by the officials of the union for publication of the same libel.   The allegedly false and malicious publication complained of is as follows:

" Our report that union officials are feathering their nests from initiation fees and dues payments is also challenged.   The point is made that Local Union 3 voted to allow members of out of town locals to work here during the World's Fair boom without paying a cent to the New York local.

" It is argued, therefore, that the North Carolina youngster with only amateur experience, who, we stated, got a very profitable electrician's job, needn't have ' paid a price ' for the privilege.   A recheck discloses that he did pay a price — and a stiff one.   It was, however, paid privately to an official of Local 3 and probably never

appeared in the union's books. Evidently the rank-and-file members of Local 3 are not aware of the practices indulged in by some of their associates.

" The plain fact is that this union and others took advantage of the setup to charge more than the traffic would have borne on any normal job."

The complaint also alleges that the union is affiliated with the American Federation of Labor; that since 1891, acting through its officers, in behalf of its members who are practical electricians, it has negotiated and collectively bargained with employers to obtain agreements providing for maximum wages so as to raise the standard of living of its members; that it has established an education department, sick and death benefits and life insurance — by reason of all of which it has built up an excellent reputation in labor circles and in other fields throughout the United States. Then follow the allegations of damages to which reference has heretofore been made.

The principal questions presented are: (1) May an unincorporated association, such as plaintiff union, maintain an action for libel? (2) Does the complaint state a cause of action in libel in favor of the sixteen union officials?

It is our view that plaintiff labor union, an unincorporated association, may, through its president or treasurer, maintain an action for libel. At common law an unincorporated association of persons could only sue or be sued in the names of its members and their liability had to be enforced against each member. ( *United Mine Workers* v. *Coronado Co.*, 259 U. S. 344, at p. 385.) In England and in this country, chiefly by statute, a labor union may now bring a legal action as well as be liable to one. As pointed out by Chief Justice TAFT in the *Coronado* case (*supra*, at p. 387), throughout the United States " many suits for and against labor unions are reported in which no question has been raised as to the right to treat them in their closely united action and functions as artificial persons capable of suing and being sued."

In this State a labor union may sue and be sued as provided in sections 12 and 13 of the General Associations Law (added by Laws of 1920, chap. 915). A judgment obtained against the union may be enforced against the personal or real property belonging to the association or owned jointly or in common by all its members. (Gen. Assn. Law, § 15.) Thus, an action brought against the president of a labor union pursuant to section 13 of the General Associations Law while nominally against him actually is against the association. (*Thomann* v. *Flynn*, 251 App. Div. 325; *Kelso* v. *Cavanagh*, 137 Misc. 653, 657, opinion by UNTERMYER, J.) The clear intent of

the statute is to permit a voluntary association to sue as well as to be sued in the manner outlined. Labor unions are now recognized as entities in the National Labor Relations Act (See § 2, Act of July 5, 1935, chap. 372 [49 U. S. Stat. at Large, 449]; U. S. Code, tit. 29, § 152) and in the New York State Labor Relations Act (Labor Law, § 701, subd. 5). In these labor statutes they are empowered to act as bargaining agencies of their members.

Appellants argue that the members of the union may not join in one cause of action for libel as the damages to reputation which each member might have sustained, vary with each member and that such damages would have to be proved separately for each member. However, by statute (Gen. Assn. Law, § 12), an action may be maintained by the president or treasurer of an unincorporated association to recover any property or upon any cause of action, for or upon which all of the associates may sue by reason of their interest or ownership therein either jointly or in common. In our opinion, each member of plaintiff union has a common interest in the reputation of the union. If the business and credit of the union be destroyed, as well it might be by defamatory statements which falsely charge corrupt and dishonest acts by the union, each of its 17,000 members is affected equally by the possible loss of position and the loss of protection and benefits furnished by the union. Each member has a common and equal interest in a cause of action to recover damages for injury thus produced. (*Stone* v. *Textile Examiners Employers' Assn.*, 137 App. Div. 655.)

It is now the general rule that a corporation may maintain an action for libel without proof of special damages in case a false publication is " ' defamatory and injuriously and directly affects its credit or the management of its business and necessarily causes pecuniary loss.' " (*N. Y. Society* v. *Macfadden Publications*, 260 N. Y. 167, 169; *Philipp Co.* v. *New Yorker Staats-Zeitung*, 165 App. Div. 377, 392.) Though a corporation has no personal reputation, a charge of insolvency or that its business is dishonestly conducted is libelous *per se* and damages are presumed. (*First Nat. Bank* v. *Winters*, 225 N. Y. 47, 52.) We see no reason why an unincorporated association such as the plaintiff union should not have the same right to such relief where, as here, it is alleged that the defamatory words tend to injure it in its business and credit. If falsehoods are circulated concerning the conduct by its officials of the affairs of a labor union, which result in creating the impression among members of the public that union activities are conducted for pecuniary advantage to its officials and not to the enhancement of the interests of its membership, the confidence of the public in the labor union is lost and its efficiency is thereby impaired.

When a union is defamed it suffers in prestige and ability to function effectively just as would a hospital or a charitable or non-profit-making institution by false accusations affecting its business. It has been said that the usefulness of benevolent, religious and other like corporations depends largely upon their reputation for honesty, fair dealing and altruistic effort to improve social conditions. (*N. Y. Society* v. *Macfadden Publications, supra,* p. 170.) With equal force may it be asserted that the usefulness of labor unions depends largely upon their reputation for honesty, fair dealing and a sincere effort to improve the standards of labor. In so far as the first cause of action alleges injury to the business and credit of the union by reason of the publication of the defamatory words, it states a good cause of action in favor of the union.

We think, however, that the complaint fails to state a cause of action in libel as to any of the individual plaintiffs who are officials of the union. The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. Where, as here, a complaint on its face shows that the defamatory words apply to unidentified members of a class and there is nothing to show to which members of the class the words apply, then no statement that the words were spoken of and concerning the plaintiff, nor any innuendo, can save the complaint. (*Hays* v. *American Defense Society,* 252 N. Y. 266; *Gross* v. *Cantor,* 270 id. 93; *Feely* v. *Vitagraph Co.,* 184 App. Div. 527; *Stroud* v. *Harris,* 5 F. [2d] 25; *Owens* v. *Clark,* 154 Okla. 108; 6 P. [2d] 755.)

The contention that the innuendo is irrelevant and redundant we find to be lacking in merit. Whether any portion of the interpretation or the whole of it is irrelevant, or whether the interpretation alleged is a correct one, is a question for the jury. " It is well settled that when the publication complained of is libelous *per se* no innuendo is necessary and, if the innuendo alleged is not borne out by the words, it may be treated as surplusage and a recovery had on the words themselves." (*Cafferty* v. *Southern Tier Publishing Co.,* 226 N. Y. 87, 91.)

For all of the foregoing reasons the orders so far as appealed from should be modified, to the extent of dismissing the second to the seventeenth causes of action, inclusive, in the amended complaint, and as so modified, the orders should be affirmed, with twenty dollars costs and disbursements to the appellants, with leave to the defendants to answer within twenty days after entry of order.

GLENNON and UNTERMYER, JJ., concur; MARTIN, P. J., dissents in opinion; DORE, J., dissents in part, with memorandum, and votes to affirm the orders appealed from.

MARTIN, P. J. (dissenting). The complaint in this action for libel alleges seventeen causes of action. The first cause of action is alleged on behalf of Local Union No. 3 of the International Brotherhood of Electrical Workers. The local is an unincorporated association of approximately 17,000 members. The appellants maintain that the complaint, in so far as the local is concerned, should be dismissed as it has no standing in law to prosecute the action.

Section 12 of the General Associations Law provides that an unincorporated association may maintain by its president or treasurer any cause of action which all the associates may maintain by reason of their joint or common interest in the cause of action. The members of the local may not join in one cause of action for libel, as the damage to reputation which each member of the local might have sustained necessarily differs from that of any other and would have to be proved separately. The interests of the members are several. In *Peacock* v. *Tata Sons, Ltd.* (206 App. Div. 145) it was pointed out that the only exceptions to the rule that two or more persons may not join in an action for words are, in the case of words uttered about partners affecting their trade or business, and in the case of slander of the title of joint owners of land.

It is urged that the local union, itself, as distinguished from its individual members and officers, may maintain the action. Of course, as an unincorporated association, it is not a legal entity. (*Ostrom* v. *Greene*, 161 N. Y. 353; *Bossert* v. *Dhuy*, 166 App. Div. 251; revd. on other grounds, 221 N. Y. 342; *Saxer* v. *Democratic County Committee of Erie County*, 161 Misc. 35.) In *Stone* v. *Textile Examiners and Shrinkers Employers' Assn.* (137 App. Div. 655), in dismissing the complaint in an action in behalf of a union in a libel case, the court said:

" The infirmity of this complaint is that it sets forth no business in which the union is engaged * * *.

" It follows from this that, the complaint being barren of any appropriate averment as to the union's engagement in any form of business, and of any allegation of damages to the union in its credit or business, it is defective, and the demurrer should have been sustained. * * * "

In *Gardner* v. *Jonas* (N. Y. L. J. Mar. 30, 1937, p. 1558) the Special Term, Supreme Court, New York County, interpreted this as authority for sustaining a complaint of a union which alleged injury to its business or credit. In neither of these cases does it appear that the status of the plaintiff as an unincorporated association was considered.

In *Bradley* v. *Conners* (169 Misc. 442), Supreme Court, Richmond County, the court said: " A trade union engages in maintaining the right of labor to organize, to bargain collectively, and to zealously guard labor's right to have its say on the question of wages and hours. Its credit and good name must be protected from the pen of libel whether it be a membership corporation, an unincorporated association or a joint-stock association. A labor union is organized for as high and laudable a purpose as a business corporation or a charitable organization. To publish that such an organization engages in a racket or that its members are racketeers should, if untrue, result in redress in an action of libel without proof of special damage."

The purpose or function of an organization is not decisive of its legal status. All unincorporated associations suffer the same disadvantages as to a limited right to sue. The respondents themselves recognize this restriction. This action is not brought by the union itself, but has been brought by its president on behalf of all its members. The cause of action not being within the class provided for by section 12 of the General Associations Law, this action may not be maintained on behalf of the union.

The causes of action alleged on behalf of the individual plaintiffs, officers of the union, are sufficient to entitle them to have a jury determine whether the article, reasonably interpreted, accused every official of corruption. (*Gross* v. *Cantor*, 270 N. Y. 93.)

The first cause of action alleged in the complaint should be dismissed.

DORE, J. I dissent and vote to affirm the orders appealed from. It is my view that the first cause of action is sufficient for the reasons set forth in the majority opinion. The second to seventeenth causes of action, inclusive, are also sufficient for the reasons set forth in the opinion of MARTIN, P. J.

Orders, so far as appealed from, modified to.the extent of dismissing the second to the seventeenth causes of action, inclusive, in the amended complaint, and as so modified affirmed, with twenty dollars costs and disbursements to the appellants, with leave to the defendants to answer within twenty days after service of order.